FILED
John E. Triplett, Acting Clerk
United States District Court

By CAsbell at 3:58 pm, Jul 21, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| ROY NOYAL REED, JR., | |
| Petitioner, | CIVIL ACTION NO.: 2:19-cv-161 |
| v. | |
| L. GETER, | |
| Respondent. | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Roy Reed ("Reed"), who is currently incarcerated at the Federal Correctional Institution-Satellite Low in Jesup, Georgia, filed this 28 U.S.C. § 2241 Petition. Doc. 1. Respondent filed a Motion to Dismiss, and Reed filed two Responses. Docs. 8, 13, 15. For the following reasons, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DISMISS without prejudice** Reed's Petition based on his failure to exhaust his administrative remedies. I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Reed leave to appeal *in forma pauperis*.

## BACKGROUND

In his Petition, Reed asserts he is currently serving a 24-month sentence for his second supervised release violation stemming from his original 45-month sentence imposed in 2012. Doc. 1 at 1. Reed challenges the Bureau of Prisons' ("BOP") calculation of his good time credit under the First Step Act. Id. at 2. Reed contends he should have good time credit applied toward his total sentence, not just to the portion of his sentence relating to the supervised release

violation. Id. at 3. Reed asks this Court to order the BOP to credit an additional 40 days' good time credit against his sentence. Id. at 4.

Respondent moves to dismiss Reed's Petition based on Reed's failure to exhaust his administrative remedies and because the BOP has credited Reed with all time to which he is entitled under the First Step Act. Doc. 8.

## DISCUSSION

### I. Whether Reed Exhausted his Administrative Remedies

#### A. Legal Requirements for Exhaustion

The Eleventh Circuit Court of Appeals has held that a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475).[1] Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549

---

[1] The Court notes that, in certain circumstances, it should not determine exhaustion issues. Specifically, in Jenner v. Stone, this Court noted, "Although exhaustion of administrative remedies is not a jurisdictional requirement in a § 2241 proceeding, 'that does not mean that courts may disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense.'" Jenner v. Stone, No. CV 317-068, 2018 WL 2976995, at *2 (S.D. Ga. May 16, 2018), *report and recommendation adopted*, 2018 WL 2972350 (S.D. Ga. June 13, 2018) (quoting Santiago-Lugo, 785 F.3d at 474–75). "However, 'a court may skip over the exhaustion issue if it is easier to deny . . . the petition on the merits without reaching the exhaustion question." Id. (quoting Santiago-Lugo, 785 F.3d at 475). Here, the Court addresses Respondent's exhaustion argument.

U.S. 199, 216 (2007). Additionally, the United States Supreme Court has "held that the PLRA's ["Prison Litigation Reform Act's"] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[2]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate.

---

[2] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B.    Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies.[3] First, the court is to take the plaintiff's version of the facts regarding

---

3    Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner would be no less applicable to a § 2241

4

exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### C.     Analysis of Reed's Efforts at Exhaustion

Respondent states Reed did not submit any administrative remedy requests relating to his sentence computation. Doc. 8 at 5. Respondent also states Reed admits he did not complete the administrative remedies process. Id. (citing Doc. 1 at 2). Thus, Respondent asserts Reed's Petition should be dismissed based on his failure to exhaust his administrative remedies. Id.

Reed responds that "the exhaustion demand of compliance implies the ability to comply." Doc. 13 at 1. Reed contends the BOP's administrative remedies process is inadequate because the time allotted under this policy to complete all three steps would not allow the BOP to address the requested relief in a timely manner. Id. at 2. Reed avers the entire process could take up to 220 days total. Id. If Reed had to comply with these steps, he alleges he would not have time to

---

proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting § 2241's exhaustion requirements and Turner's application of exhaustion standards to a § 2241 petition).

complete these steps before his re-calculated release date of January 12, 2021.[4]  Despite these assertions, Reed also asserts he filed a BP-9 on February 18, 2020.  Doc. 15 at 1.  However, he maintains his BP-9 was not received by staff until March 12, 2020, and, as of April 22, 2020, he had received no response to this remedy request.  Id.

The BOP has established an administrative remedy procedure through which an inmate may seek review of a grievance related to any aspect of his imprisonment.  28 C.F.R. § 542.10 *et seq*.  The Administrative Remedy Program applies to all inmates incarcerated in penal institutions operated by the BOP.  § 542.10(b).  Under the applicable Regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff.  § 542.13(a).  If this does not resolve the matter, an inmate must submit a formal written administrative remedy request ("BP-9") within 20 calendar days of the incident giving rise to the grievance.  § 542.14(a); Doc. 8 at 4.  If unsatisfied with the Warden's response, an inmate may appeal with the Regional Director ("BP-10") within 20 days of the Warden's response.  § 542.15(a); Doc. 8 at 4.  If dissatisfied with the Regional Director's response, an inmate may take a final appeal ("BP-11")to the BOP's Office of General Counsel in Washington, D.C., within 30 days of when the Regional Director signed the response.  Id.  Appeal to the BOP's Office of General Counsel is the final step in the BOP's administrative remedy process.  Id.  Inmates must complete all three steps of the administrative remedies process to have exhausted his administrative remedies.

The evidence before the Court reveals Reed has not completed the administrative remedies process as to his claims regarding his sentence computation.  Doc. 1 at 2; Doc. 8 at 5;

---

[4]     Reed's projected release date is February 21, 2021.  Doc. 8-1 at 3.  Reed arrives at a January 12, 2021 release date by subtracting the 40 days' additional credit to which he claims to be entitled from his calculated projected release date.

Doc. 13 at 1–2; Doc. 15 at 1.  In fact, Reed admits he did not even begin the administrative remedies process until after Respondent filed her Motion to Dismiss on February 4, 2020, and the Court directed service of the Motion to Dismiss on February 6, 2020.  Docs. 8, 9; Doc. 15 at 1 ("In an attempt to follow the Administrate Remedy process, Petitioner filed his grievance through his assigned Counselor. . . . [T]he process began on or around February 18, 2020.  Form was returned without signatures and Petitioner was issued a BP-9.  He immediately began working on constructing this document. . . . .").  In addition, Dawn Giddings, a correctional programs specialist at the Designation and Sentence Computation Center, declares Reed did not "complete[] the administrative remedy process at any level."  Doc. 8-1 at 3.  In support of her declaration, Ms. Giddings cites to Reed's administrative remedy information through the SENTRY database.  Id. & at 20.  Indeed, this information reveals Reed had not filed any administrative remedies as of January 28, 2020, the date Ms. Giddings executed her declaration. Id. at 3, 20.

The only evidence before the Court regarding Reed's attempts at exhaustion reveals that Reed has not completed the administrative remedies request process regarding his sentence computation.  This evidence reveals that Reed received an informal resolution form on February 18, 2020, which the Court considers the date he executed this form, absent evidence to the contrary, and a staff member signed an unidentified receipt for a good time credit request on March 12, 2020.  Doc. 15 at 2; Doc. 15-1 at 1.  As noted above, both of these dates are after Respondent filed her Motion to Dismiss and this Court ordered service of the Motion upon Reed. There is no evidence Reed pursued this process before he filed his Petition on December 18, 2019, doc. 1, or otherwise pursued the process through to its completion.  Bryant, 530 F.3d at 1378 (noting all steps in the administrative remedies process must be completed before a party

7

files a cause of action with a court).[5]  Consequently, the Court should **GRANT** Respondent's Motion to Dismiss and **DISMISS without prejudice** Reed's claims based on his failure to exhaust his available administrative remedies prior to the filing of his § 2241 Petition.[6]

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Reed leave to appeal *in forma pauperis*.  Though Reed has not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's order of dismissal.  See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in*

---

[5]   The Court notes Reed's contention that the time it would have taken to start and complete the administrative remedies process before he filed his Petition was too lengthy, rendering the administrative remedies process futile.  However, had Reed begun the process at the time he executed his Petition on December 13, 2019, doc. 1 at 4, that process would have been completed by now, even if the BOP had extended the time for response at each level.  §§ 542.15(a), 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.").  Thus, Reed's argument that compliance with the administrative remedy process is "impossible" in these circumstances is fundamentally wrong.

[6]   Because I conclude Reed failed to exhaust his administrative remedies prior to filing his Petition, it is unnecessary to address Respondent's alternative ground for dismissal.  See Doc. 8 at 5 (arguing that Petitioner's claim fails on the merits and citing Jamison v. Warden, Elkton Federal Correctional Institution, No. 1:19-cv-789, 2019 WL 5690710 (S.D. Ohio Nov. 4, 2019), *report and recommendation adopted,* 2019 WL 6828358 (S.D. Ohio Dec. 12, 2019)).

*forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Reed's filings and Respondent's Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Reed *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DISMISS without prejudice** Reed's Petition based on his failure to exhaust his administrative remedies. I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Reed leave to appeal *in forma pauperis*.

The Court directs any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered. Any objections asserting that the undersigned failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions herein. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the

specificity requirement set out above will not be considered by the District Judge.

**SO REPORTED and RECOMMENDED**, this 21st day of July, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA